IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN LAMONT SHEPPARD )
 )
    Plaintiff, )
 )
  v. ) Civil Action No. 06-0855
 )    (RBW)
 )
UNITED STATES OF AMERICA, )
 )
    Defendant. )

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

 COMES NOW Plaintiff, Kevin Lamont Sheppard, by and through undersigned counsel, and submits Plaintiff's Opposition to Defendant's Motion To Dismiss. The grounds for said opposition are outlined in the attached Memorandum of Points and Authorities.

     Respectfully submitted,

     _____
     David M. Nester, #421894
     717 D Street, N.W., Suite 310
     Washington, D.C. 20004
     (202) 783-4474
     Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN LAMONT SHEPPARD    )
    )
        Plaintiff,    )
    )
        v.    ) Civil Action No. 06-0855
    )        (RBW)
    )
UNITED STATES OF AMERICA,  )
    )
        Defendant.    )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Kevin Lamont Sheppard, by and through undersigned counsel, respectfully submits the following memorandum of points and authorities in support of his opposition to Defendant's Motion To Dismiss:

1.    STATEMENT OF FACTS

On or about May 8, 2006, Plaintiff, Kevin Lamont Sheppard, filed the instant action against Defendant United States of America for negligence under the Federal Tort Claims Act, 28 U.S.C. Section 2671, et seq. Complaint at 1. Plaintiff alleges in this action that the Federal Bureau of Prisons (BOP) and the United States Marshal Service (USMS) were negligent in failing to ensure that he was timely released from incarceration. Complaint, 13-22.

On or about May 16, 1995, Plaintiff was indicted in the United States District Court for the District of Columbia in case no 95-0116. Plaintiff's Exhibit #1. Pursuant to this indictment, on or about May 16, 1995, an arrest warrant was issued for Kevin R. Shepherd, 9833 Cherrytree Lane, Silver Spring, MD, DOB: _____, PDID# 380168.

2

<u>Plaintiff's Exhibit #2</u>. On or about May 25, 1995, United States Magistrate Kay issued a Writ Of Habeas Corpus Ad Prosequendum. The writ is captioned United States of America v. <u>Kevin Lamont Sheppard</u>, Criminal No. 95-116 (RCL). The writ directed the Warden of Prince George's County Correctional Center to produce <u>Kevin Lamont Sheppard</u>. <u>Plaintiff's Exhibit #3</u>. (Emphasis Added).

On or about January 20, 1996, Plaintiff was charged in the Superior Court of the District of Columbia with distribution of cocaine in case no. F439-96. He was charged in that case as Kevin R Shepherd. The commitment order of January 20, 1996 in that case listed his date of birth as _____ and his PDID # as 380-168. The release order in that case listed Plaintiff's address as 9833 Cherry Tree Lane. <u>Plaintiff's Exhibit #5</u>.The pretrial services report in that case indicates that the defendant named "Kevin Randall Sheppard" was also known as "Kevin Randall Shepherd"; "Kevin Randall Shepperd"; and "Kevin Lamont Sheppard". <u>Plaintiff's Exhibit #6</u>. The pretrial report further lists his pending cases as "D95-000116, filed 5/16/95, type Grand Jury Original. <u>Id</u> . The criminal complaint in Superior Court case no. F439-96 lists Plaintiff's address as 9833 Cherry Tree Lane, Silver Spring, MD, his date of birth as _____ and his PDID # as 380-168. <u>Plaintiff's Exhibit #7</u>. Plaintiff's Exhibits 5-7 were and are all contained in the USDC criminal file, case no 95-116-RCL-2.

On or about February 8, 1996, Assistant United States Attorney Patricia Stewart filed Information As To Prior Conviction in case no. 95-116 (RCL). The relevant portion of said filing stated: "The United States of America….hereby notifies the Court pursuant to 21 U.S.C. Section 851, that the defendant, Kevin Randall Shepherd, PDID 380-168,

aka Kevin Randall Sheppard, also known as Kevin Lamont Sheppard…." Plaintiff's Exhibit #8.

On or about May 15, 1996, Assistant United States Attorney Patricia Stewart sent a plea agreement letter to Plaintiff's defense counsel, Edwin C. Brown. The letter was captioned "RE: United States v. Kevin R. Shepherd aka Kevin L. Sheppard, Criminal Number 95-116." Plaintiff's Exhibit #9.

On or about August 7, 1996, a Receipt and Acknowledgment of Presentence Investigation Report was filed. It was captioned USA v. Kevin R. Shepard, Criminal Case no. 95-0116-02, SSN _____ . The Presentence Investigation Report in the United States v. Kevin R. Shepherd, Docket No. 95-0116-02, lists Plaintiff's date of birth as _____; SS# as _____, PDID# 380-168, address 9833 Cherry Tree Lane, Silver Spring, MD 20911 and aliases as Kevin Lamont Sheppard and Harry Winfred Sheppard. Due to the confidential nature of the PSI, Plaintiff has not attached said report but was informed by the clerk's office that it is available to this court by request.

On or about August 12, 1996, the Honorable Royce C. Lamberth sentenced Plaintiff to 121 months incarceration in case number 95-116(2) RCL. Complaint at 7.

On or about December 6, 2002, the United States Attorney for the District of Columbia filed a motion to reduce sentence pursuant to FRCP 35. Complaint at 8. On or about December 12, 2002, Judge Lamberth resentenced Plaintiff to time served. Defendant's Exhibit #1 and 2

On or about December 12, 2002, a copy of the judgment and commitment order was logged in at the Office of the United States Marshal Service in the United States District Court for the District of Columbia. Plaintiff's Exhibit #11.

On or about December 15, 2002, Plaintiff was interviewed by Case Manager Anderson at the Leavenworth detention facility. At that time Case Manager Anderson did not review or verify his release date. Plaintiff was not released from custody until October 7, 2003. <u>Complaint</u> at 12.

On or about December 15, 2002, the Bureau of Prisons conducted a program review of Plaintiff and prepared a report which listed his release date as 11/19/04.

On or about December 3, 2004, a Standard Form 95 (Claim for Damage, Injury or Death) was filed on behalf of the Plaintiff with the United States c/o the Office of the General Counsel, Federal Bureau of Prisons and the Office of the General Counsel of the United States Marshal Service. <u>Complaint at 3</u>. On or about December 2, 2004, counsel for Plaintiff posted by Federal Express a Standard Form 95 to Kathleen Kennedy, Esq., Office of the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. The Federal Express tracking number for this posting was 4245138800. <u>Plaintiff's Exhibit#13</u>.  The Federal Express Proof of Delivery document indicates that said posting was delivered to Kathleen Kennedy, 320 First Street, N.W., 20534 on December 3, 2004 at 11:09. The proof of delivery also indicates that the posting was signed for by S. Jackson. <u>Plaintiff's Exhibit #14</u>.

2.      <u>STANDARD OF REVIEW</u>

Defendant is seeking to dismiss the instant complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). "Under settled law, the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone. But where necessary, the court may consider

the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed

facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

Instantly, both Defendant and Plaintiff are presenting affidavits and other extrinsic

information for the court to consider .

The Herbert court also stated :

"Indeed, this Court has previously indicated that ruling on a Rule 12(b)(1) motion
may be improper before the plaintiff has had a chance to discover the facts
necessary to establish jurisdiction.Collins v. New York Central System 327 F.2d
880 (D.C. Cir. 1963). In many instances it may be necessary to hold evidentiary
hearings in resolving particularly complicated factual disputes rather than to rely
on affidavits alone. See Williamson, 645 F.2d at 414. Id. at 198.

This issue was more recently address by the Honorable Emmitt Sullivan in Artis

v. Greenspan, 223 F.Supp. 2d 149 (D.D.C. 2002) where the court held that further

discovery was warranted before the court could determine whether it had subject matter

jurisdiction over action. In so holding the court stated:

"[w]hile the parties have attached a significant number of documents to their
pleadings, the Court is mindful that the parties have not engaged in any formal
discovery. Where a defendant has challenged 'only the legal sufficiency of the
Plaintiff's jurisdictional allegations,' the Court must take the plaintiff's factual
Allegations as true in determining whether subject matter jurisdiction is
appropriate. Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40
(D.C. Cir. 2002). However, where the defendant submits materials outside the
Pleadings to support its motion to dismiss for lack of subject matter jurisdiction,
the Court must consider whether the motion 'present[s] a dispute over the factual
basis of the court's subject matter jurisdiction…[i]n such a case, '[t]he district
court retains 'considerable latitude in devising the procedures it will follow to
ferret out the facts pertinent to jurisdiction,' but it must give the plaintiff 'ample
opportunity to secure and present evidence relevant to the existence of
jurisdiction.'" Id. (quoting Prakash v. American Univ., 727 F.2d 1174, 1179-80
(D.C. Cir. 1984). Herbert at 154.

The Eleventh Circuit confirmed the requirement for discovery as in the case at bar

in Eaton v. Dorchester Development, Inc., 692 F.2d 727, 731 (11th Cir. 1982) where the

court held: "[t]he district court's dismissal for lack of subject matter jurisdiction was premature. Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction. As we said in <u>Blanco</u>, 'the rules entitle a plaintiff to elicit material through discovery before a claim may be dismissed for lack of jurisdiction."

Judge Royce C. Lamberth of this court ruled on a defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for failure to exhaust administrative remedies in <u>Alexander v. FBI</u>, 971 F.Supp. 603 (D.D.C. 1997). The Court in <u>Alexander</u> held that former government employees and political appointees bringing an action for invasion of privacy against White House staff, based upon staff's request of plaintiff's FBI files for allegedly improper purpose, were entitled to discovery before the district court reviewed issue of whether requests were made within scope of staff's employment for purposes of substituting United States as defendant, and therefore, United States' motion to dismiss for failure to exhaust administrative remedies would be deferred.

The United States Court of Appeals for the Tenth Circuit in <u>Sizova v. NIST</u>, 282 F.3d 1320 (10th Cir. 2002) reviewed the grant of a defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for failure to exhaust administrative remedies. The court reversed holding:

> "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by the motion. <u>Buddle v. Ling-Temco Vought, Inc.</u>, 511 F.2d 1033, 1035 (10th Cir. 1975). Although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction under Rule 12(b)(1), <u>see Holt</u>, 46 F.3d at 1003, a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant, <u>see First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 150 F.3d 172, 176-77 (2nd Cir. 1998); <u>Filus v. Lot Polish Airlines</u>, 907 F.2d 1328, 1332 (2nd Cir. 1990); <u>Majd-Pour v. Georgiana Cmty. Hosp., Inc.</u>, 724 F.2d 901, 903 (11th Cir. 1984); <u>Canavan v. Beneficial Fin. Corp.</u>, 553 F.2d 860, 865 (3rd Cir. 1977),

7

prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted…or where a more satisfactory showing of the facts is necessary." <u>Wells Fargo & Co. v. Wells Fargo Express Co.</u>, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)." <u>Id</u> at 1326.

3.  <u>PLAINTIFF HAS STANDING AND SUBJECT MATTER JURISDICTION IS PROPER</u>

Defendant moves this court to dismiss the instant matter for lack of subject matter jurisidiction. Defendant contends that Plaintiff is not the real party in interest and therefore, has suffered no injury in fact.

The Supreme Court in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130 (19920 held that the "irreducible constitutional minimum of standing contains three elements: plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is concrete and particularized; there must be a causal connection between the injury and the conduct complained of-the injury must be fairly traceable to the challenged action of the defendant; and it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision."

Plaintiff submits that Defendant's claim of lack of standing is without merit and disingenuous. Defendant bases their motion on the fact that Plaintiff, Kevin Lamont Sheppard, was charged in Criminal Case no. 95-116 as Kevin R. Sheppard. Defendant argues that this discrepancy alone entitles them to dismissal of the instant action. As noted in Plaintiff's Exhibits 1-10, Kevin Lamont Sheppard is Kevin R. Sheppard. Defendant's claim that Kevin Lamont Sheppard lacks standing to litigate Kevin R. Shepherd's claim is without merit.

Defendant further argues that Plaintiff's DOB and SSN are public record by virtue of their inclusion in J. Lamberth's 12/12/02 order. This argument neglects to

consider the fact that the criminal matter was sealed until undersigned counsel filed a

Motion To Unseal Record on behalf of Plaintiff on 11/21/03.

4.  PLAINTIFF'S CLAIMS ARE NOT EXCEPTED FROM THE FEDERAL TORT
    CLAIMS ACT AND JURISDICTION IS PROPER

        Defendant also seeks dismissal of this action, pursuant to Fed. R. Civ. P. 12(b)(1),

"because the wrongs alleged are not cognizable under the Federal Tort Claims Act's

limited waiver of sovereign immunity." Defendant's Motion To Dismiss, p. 5. Plaintiff

contends that the relevant case law recognizes the instant claims and Defendant's Motion

To Dismiss must be denied.

        28 U.S.C.A. Section 2674 outlines the liability of the United States under the

Federal Tort Claims Act: "[t]he United States shall be liable, respecting the provisions of

this title relating to tort claims, in the same manner and to the same extent as a private

individual under like circumstances, but shall not be liable for interest prior to judgment

or for punitive damages."

        28 U.S.C.A. Section 1346 (b)(1) provides:

> "[s]ubject to the provisions of chapter 171 of this title, the district courts together
> with the United States District Court for the District of the Canal Zone and the
> District Court of the Virgin Islands, shall have exclusive jurisdiction of civil
> actions on claims against the United States, for money damages, accruing on and
> after January 1, 1945, for injury or loss of property, or personal injury or death
> caused by the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment, under
> circumstances where the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act or omission
> occurred."

In the case at bar, Plaintiff brought a negligence action under 28 U.S.C. Section 2671, et

seq. against the Bureau of Prisons and the United States Marshal Service. Plaintiff has

alleged that the acts and omissions of the employees of the Bureau of Prisons and the

United States Marshal Service were done with the scope of their employment. <u>Complaint</u> at 6. Pursuant to 28 U.S.C. Section 1346 (b), a private person would be liable for their negligent acts and/or omissions under the laws of the District of Columbia. <u>See</u> <u>Standardized Civil Jury Instruction 5.1</u>; <u>Powell v. District of Columbia</u>, 634 A.2d 403, 406 (D.C. 1993).

      Defendant contends that the instant case should be dismissed since it is "nothing more than a false imprisonment claim. Claims of false imprisonment are expressly barred, since the FTCA exempts '[a]ny claim arising out of assault, battery or false imprisonment.'" <u>Defendant's Motion To Dismiss</u>, p.5-6. Defendant acknowledges that false imprisonment actions may stand where it involves the "acts or omissions of investigative or law enforcement officers of the United States Government. <u>Defendant's</u> <u>Motion To Dismiss</u>, p.6. However, Defendant submits that any acts or omissions of any Bureau of Prisons or United States Marshal employees in the instant case were not done in any "investigative or law enforcement" context and thus, there is no waiver of immunity under the FTCA.

      As discussed above, Plaintiff submits that his negligence claims are proper under the FTCA. However, Plaintiff argues that even if his claims are to be characterized as false imprisonment claims they are proper under the FTCA. 28 U.S.C. Section 2680 lists the exceptions to the waiver of sovereign immunity under the FTCA. Specifically, 28 U.S.C. 2680 (h) states:

> "[a]ny claim arising out of assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit,
> or interference with contract rights: Provided, That, with regard to acts or
> omissions of investigative or law enforcement officers of the United States
> Government, the provisions of this chapter and section 1346(b) of this title shall
> apply to any claim arising, on or after the date of the enactment of this proviso,

> out of assault, battery, false imprisonment, false arrest, abuse of process, or
> malicious prosecution. For the purpose of this subsection, 'investigative or law
> enforcement officer; means any officer of the United States who is empowered by
> law to execute searches, to seize evidence, or to make arrests for violations of
> Federal law."

Defendant concedes that the Bureau of Prisons and the United States Marshal Service

employ "law enforcement officers" as defined by the statute. Defendant's Motion To

Dismiss, p.6. However, Defendant argues that the exception does not apply since

Plaintiff's claims do not relate to an arrest but instead to the length of confinement.

The D.C. Circuit specifically addressed this issue in Sami v. United States, 617

F.2d 755 (D.C. Cir. 1979). The Plaintiff in Sami was wrongfully detained by German

officials as a result of a communiqué sent by Chief of the United States National Central

Bureau (USNCB).  He brought suit against the United States, Interpol and the Bureau

Chief alleging false arrest, false imprisonment, defamation and various constitutional

claims. The district court dismissed all actions against all defendants. The action against

the United States was dismissed under the district court's interpretation of 28 U.S.C.

2680 (h). The section 2680 (h) allegation was made against the Sims, Chief of USNCB,

for sending the communiqué, which resulted in his detention. The United States argued

that 2680(h) did not apply since Sims and other USNCB officers did not initiate or

conduct investigations of their own but act primarily as conduits and screeners of

information between foreign police departments and federal and state counterparts. The

Sami court reversed and held:

> "[w]e deduce from this report an intent to 'provide a remedy against the Federal
> Government for innocent victims of Federal law enforcement abuses,…and we
> find no indication that it was not meant to cover the situation where law
> enforcement officers are assigned to duties that do not involve their actual
> participation in making arrests or conducting investigations. By defining
> "investigative or law enforcement officer' and by limiting the wrongs covered in

the section 2680(h) exception to false arrest, false imprisonment, malicious prosecution or abuse of process, Congress set finite boundaries around the kind of law enforcement abuses for which it wished to make the government liable." <u>Id</u> at 764-765.

In support of Defendant's interpretation of 28 U.S.C. Section 2680 (h), they cite <u>Orsay v. U.S.</u>, 289 F.3d 125 (9th Cir. 2002). Defendant cites <u>Orsay</u> for the proposition that "[c]ongress intended section 2680 (h) to apply only when the federal official acts in his or her investigative or law enforcement capacity." <u>Defendant's Motion To Dismiss</u>, p.6. The appellants, two deputy U.S. Marshals, in <u>Orsay</u> brought FTCA actions against the Marshal service, DOJ, OIG, and seven employees alleging that a supervisor pointed a loaded gun at them on a number of occasions and said things like: "[y]ou're dead, you're history, gotcha and you never had a chance." These actions of their supervisor are plainly distinguishable from the case at bar. Plaintiff submits that Sims' actions were not "within the scope of his employment" as required by 28 U.S.C. Section 1346 (b)(1). As noted in the opinion, "[a]ppellees concede in their argument on appeal that Claxton was acting within the scope of his employment when he engaged in the alleged conduct. Basically, Appellees had to concede this point in order to argue that Appellants' FTCA claims regarding Claxton's conduct fell within the scope of CSRA." <u>Orsay</u> at 1132-1133. The supervisors actions, in pointing a loaded gun at his subordinates,  were not part of any of his assigned legitimate investigative or law enforcement activities. As noted below, both the United States Marshal service and the Bureau of Prisons are responsible for ensuring that prisoners are released in accordance with court orders, monitoring prisoner release dates and updates to their sentences, and communicating and exchanging information with other agencies regarding prisoner processing and release. <u>Complaint</u> at 15, 20. "Section 2680 (h) does not in our view grant an exception to a tortuous failure of an

agency of the United States to perform a duty imposed upon it by law…" <u>Hicks v. US</u>,
511 F.2d 407 (D.C. Cir. 1975). Furthermore, the Ninth Circuit ruling in <u>Orsay</u> is in direct
conflict with <u>Sami</u>, the controlling case in the D.C. Circuit. Plaintiff submits that the acts
and omissions of the United States Marshal Service and the Bureau of Prisons as alleged
in the complaint are proper under the FTCA and Defendant's Motion To Dismiss
pursuant to Fed. R. Civ. P. 12(b)(1) must be denied.

4.    <u>DEFENDANT VIOLATED ITS DUTIES TO PLAINTIFF</u>

Defendant seeks dismissal of this action claiming that Plaintiff cannot show any
common law duty that Defendant breached giving rise to a tort claim. Plaintiff submits
that the regulations governing the Bureau of Prisons and United States Marshal Service
evidence their duties and breaches of said duties to Plaintiff.

"Under District of Columbia law, whether a duty is owed is a question of law to
be determined by the court…[s]uch a determination should be made :"by reference to the
body of statutes, rules, principles, and precedents."(Citations Omitted) <u>Hoehn v. United</u>
<u>States</u>, 217 F.Supp.2d 39 (D.D.C. 2002). Plaintiff submits that federal regulations placed
a duty on both the United States Marshal Service and the Bureau of Prisons to failing to
have "proper procedures to ensure that prisoners are released in accordance with court
orders, failing to monitor prisoner release dates and updates to their sentence(s), failing to
communicate and exchange information with other agencies regarding prisoner
processing and release." <u>Complaint</u> at 15, 20.

The duties of the Bureau of Prisons to Plaintiff are outlined in the following CFR
citations: 28 C.F.R. Section 524.12(b) provides that "[s]taff shall conduct a program
review for each inmate at least once every 180 days. When an inmate is within twelve

months of the projected release date, a program review shall be conducted every 90 days." 28 C.F.R. Section 524.14 states: "staff shall establish a procedure to ensure that inmates are provided program reviews as required by this rule." 28 C.F.R. Section 524.40 defines the purpose and scope of the progress reports: "The Bureau of Prisons maintains current information on each inmate through progress reports completed by staff. The content of progress reports is outlined in 28 U.S.C. Section 524.42:

> "Staff shall include the following in each progress report: (a) Institution (full name) and Date; (b) type of progress report; (c) committed name; (d) Registration number; (e) age; (f) present security and custody level; (g) Offense(s) for which committed; (h) sentence; (i) date sentence began; (j) time served to date, including jail time credit; (k) Good conduct time/Extra good time earned; (l) Statutory good time withheld or forfeited; Disallowed good conduct time; (m) projected release date…(q) Release planning. (Emphasis Added).

28 U.S.C. Section 524.75 governs the review of inmates in the Central Inmate Monitoring System to which Plaintiff was assigned during his incarceration and provides: "[t]he Warden shall ensure that the status of an inmate's CIM assignment is considered at each program review."

Plaintiff submits that the foregoing regulations outline the specific duties the Bureau of Prisons owed to him during his period of incarceration. Additionally, Plaintiff contends that the Bureau of Prisons breached said duties after Judge Lamberth ordered his release on December 12, 2002. A December 15, 2002 Program Review report lists his projected release date as 11/19/04. Plaintiff's Exhibit #12. This review was done three (3) days after the issuance of Judge Lamberth's order.

The duties owed to Plaintiff by the United States Marshal Service are outlined in 28 C.F.R. Section 0.111 which provides:

> "[t]he Director of the United States Marshal Service shall direct and supervise all activities of the U.S. Marshals Service including:...(j) receipt, processing and

transportation of prisoners held in the custody of a marshal or transported by the U.S. Marshals Service under cooperative or intergovernmental agreements;…(l) [c]oordination and direction of the relationship of the offices of the U.S. Marshals With the other organizational units of the Department of Justice…(q) [e]xercising the power and authority vested in the Attorney General under 28 U.S.C. 510 to conduct and investigate fugitive matters, domestic and foreign involving escaped federal prisoners, probation, parole, mandatory release, and bond default violations.

Plaintiff argues that the USMS had a duty to properly process his release order, to coordinate his ordered release with the Bureau of Prisons, and to investigate his mandatory release. These duties are referenced via paragraphs 15 and 20 of Plaintiff's Complaint.

In Williams v. Heard, 533 F.Supp. 1153 (D.C. Texas 1982), a prisoner filed a section 1983 action against the sheriff for failing to release him after he was no billed by the grand jury.  After trial, the district court directed a verdict for the plaintiff and submitted the issue of damages to the jury. The court found the sheriff liable for the actions of his deputies since it determined that the sheriff had "failed to adopt reasonable internal practices to ensure that the only persons incarcerated are those persons for whom his deputies had a good faith belief based upon objective evidence that they possess legal authority to imprison. Id. at 1157. The Williams case plainly evidences a duty upon a jailor to ensure that his prisoners are released in accordance with a court's directive.

Plaintiff submits that the instant complaint and relevant case law evidence the duties owed to Plaintiff by Defendant. Therefore, Defendant's Motion To Dismiss must be denied.

4.    DEFENDANT IS NOT ENTITLED TO JUDICIAL IMMUNITY FOR
      PLAINTIFF'S FTCA CLAIMS

Defendant argues that the USMS and BOP should be entitled to judicial immunity

for failing to transmit the court's order reducing his sentence and for failing to release

him. Plaintiff acknowledges that the D.C. Circuit has extended judicial immunity to

courtroom clerks. Sidram v. Suda, 986 F.2d 1459, 1460 (D.C.Cir. 1993) and to probation

officers in the preparation of presentence reports Turner, II v. Barry, Jr., 856 F.2d 1539,

1540 (D.C. Cir. 1988). The court's holding in Turner  stated that "absolute immunity has

been extended to other quasi-judicial officials when (1) their activities are integrally

related to the judicial process and (2) they must exercise discretion comparable to that

exercised by a judge." Id at 1540. Defendant has argued that the acts of transmitting the

court's order and the failure to release Plaintiff were ministerial tasks. Defendant's

Motion To Dismiss, p.8-9. Even if the activities of BOP and USMS were found to be

integral to the judicial process, the lack of the "exercise of discretion comparable to that

exercised by a judge" precludes the application of judicial immunity. Moreover, Plaintiff

was unable to find any authority extending judicial immunity to either the BOP or

USMS. Therefore, Defendant's Motion To Dismiss on the basis of judicial immunity

must be denied.

5.    PLAINTIFF EXHAUSTED HIS REMEDIES WITH THE BUREAU OF
      PRISONS PRIOR TO FILING THE INSTANT ACTION

Defendant argues that Plaintiff failed to exhaust his administrative remedies prior

to the filing of the instant action. In support of this proposition, Defendant submitted the

affidavit of Renee Brinker Fornshill. In her affidavit Ms. Fornshill stated that her search

of the BOP records revealed that Kevin L. Sheppard, BOP Register No 29682-037 had not filed any FTCA claims with BOP.

28 U.S.C. Section 2401 (b) states that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." In accordance with 28 U.S.C. Section 2401 (b), on or about December 3, 2004, a Standard Form 95 (Claim for Damage, Injury or Death) was filed on behalf of the Plaintiff with the United States c/o the Office of the General Counsel, Federal Bureau of Prisons and the Office of the General Counsel of the United States Marshal Service. Complaint at 3. On or about December 2, 2004, counsel for Plaintiff posted by Federal Express a Standard Form 95 to Kathleen Kennedy, Esq., Office of the General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534. The Federal Express tracking number for this posting was 4245138800. Plaintiff's Exhibit#13. The Federal Express Proof of Delivery document indicates that said posting was delivered to Kathleen Kennedy, 320 First Street, N.W., 20534 on December 3, 2004 at 11:09. The proof of delivery also indicates that the posting was signed for by S. Jackson. Plaintiff's Exhibit #14. Correspondingly, Plaintiff submits that he has adequately exhausted his administrative remedies regarding the BOP and Defendant's Motion To Dismiss must be denied.

6.    <u>CONTRIBUTORY NELIGENCE IS A JURY QUESTION AND PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT</u>

Defendant argues that Plaintiff was contributorily negligent and seeks dismissal on that basis.  Plaintiff submits that issues of contributory negligence are jury questions and even if they were not, Plaintiff was not contributorily negligent in the case at bar. This issue was addressed in <u>Poyner v. Loftus</u>, 694 A.2d 69 (D.C. 1997) where the court held:

> "[o]rdinarily, questions of negligence and contributory negligence must be decided by the trier of fact. <u>Washington v. A. & H. Garcias Trash Hauling,</u> 584 A.2d 544, 545 (D.C. 1990). A party asserting the defense of contributory negligence is required to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care. Singer v. Doyle 236 A.2d 436, 438 (D.C. 1967). "Only in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law." <u>Tilghman v. Johnson</u>, 513 A.2d 1350, 1351 (D.C. 1986) (citations omitted). The issue of contributory negligence should not be submitted to the jury, however, where the evidence, taken in the light most favorable to the plaintiff, establishes contributory negligence so clearly that no other inference can reasonably be drawn. See <u>District of Columbia v. Brown</u>, 589 A.2d 384, 387-88 (D.C. 1991) (citations omitted).

The <u>Poyner</u> court found contributory negligence as a matter of law where a pedestrian, who was legally blind, was not using reasonable care when he fell from elevated walkway which led to store entrance after turning to face person who had called to him. The pedestrian, who could see only six to eight feet in front of him, was not using cane or seeing eye dog, and was not looking forward at time of fall and thus did not see that shrub which was usually on walkway, and which he had used in past to guide himself, had been removed. These extraordinary facts demonstrate the type of evidence required to find contributory negligence as a matter of law. Obviously, such facts do not exist in this case.

18

Defendant argues that Plaintiff knew or should have known that he was not released in accordance with Judge Lamberth's order and should have taken steps to secure his release. Defendant also contends that Plaintiff was represented by counsel and that counsel's failure to leave a forwarding address led to the return of his service copy of Judge Lamberth's order.

The relevant case law does not support a finding of contributory negligence as a matter of law. Plaintiff's counsel's CJA representation of him practically terminated as the time of sentencing. Plaintiff was originally sentenced in the criminal matter on August 12, 1996. Judge Lamberth's order was signed on December 12, 2002, more than six (6) years later. Moreover, Plaintiff did not become aware of the entry of Judge Lamberth's order until October of 2003 when he sought a furlough from his incarceration. Without knowledge of the order and his entitlement to release, his failure to take any action could not constitute contributory negligence. The alleged acts and omissions of Plaintiff do not establish contributory negligence "so clearly that no other inference can reasonably be drawn." Therefore, Defendant's Motion To Dismiss must be denied.

7.    THE DISTRICT OF COLUMBIA IS A PROPER VENUE FOR THIS ACTION

Defendant contends that venue is not proper in the District of Columbia since Plaintiff resides in Maryland and the torts complained of in this case occurred where Plaintiff was incarcerated in Kansas. Plaintiff alleges that the tortuous activity occurred in the District of Columbia and venue is proper here.

28 U.S.C. Section 1402 (b) provides that "any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted

only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

Plaintiff's Complaint alleges at paragraphs 15 and 20 that BOP and USMS respectively breached their duties to Plaintiff by "failing to have proper procedures to ensure that prisoners are released in accordance with court orders, failing to monitor prisoner release dates and updates to their sentences, failing to communicate and exchange information with other agencies regarding prisoner processing and release and was otherwise negligent." As noted above, Judge Lamberth's courtroom clerk, Monte Keller, took a copy of the judgment and commitment order to the Office of the United States Marshal in the United States District Court for the District of Columbia. Plaintiff's Exhibit 11. A review of this log indicates that the order was filed on 12/12/02, was "logged" 12-2002, Date/M.O. 12/20/02 and was initialed by an unknown Marshal's Office employee. All of the entries on this document, with the exception of Plaintiff, Kim E. Boyd and a sealed case, bear the initials of GMC. The initials on Plaintiff's entry are illegible. The variance in the initials and the lack of a day in the date logged seem to suggest that Plaintiff's order was not done in accordance with USMS procedure. Plaintiff contends that the acts and omissions of the USMS employee on that date evidence tortious acts or omissions in the District of Columbia.

Furthermore, Plaintiff submits that the acts and omissions of BOP and USMS on or about December 12, 2002 constitute the tortious conduct within the District of Columbia. The processing of Judge Lamberth's order by both agencies required affirmative conduct or action within the District of Columbia.

To argue that all the tortiuous conduct occurred in Leavenworth, Kansas is without merit. Defendant contends that the tort or torts Plaintiff is complaining about occurred when Plaintiff was incarcerated in Kansas. Defendant argues that at the time of the alleged torts, Plaintiff was incarcerated in Kansas, the alleged failure to release occurred in Kansas, and the only federal official mentioned in the Complaint is a Leavenworth prison official. At this stage of the proceeding, prior to any discovery, it appears that the tortuous conduct occurred or originated in the District of Columba. The Marshal's log seems to indicated that there was an eight day delay in the processing of Judge Lamberth's order in the District of Columbia. This fact is supported by the date contained in the Program Review Report of 12/15/2002. The report lists Plaintiff's projected release date as 11/19/2004. It seems that the report was generated from an institutional computer on 12/15/2002 at 8:55:07, three days after Judge Lamberth's order. A review of the chronology of events in this case seem to suggest that the eight day delay in the processing of the order in the District of Columbia may have led to the incorrect release date on the 12/15/02 Program Review report. Plaintiff submits that the record to date indicates that the tortuous conduct alleged here occurred in the District of Columbia and venue is proper in this court. Therefore, Defendant's Motion To Dismiss must be denied.

8.    THE CONVENIENCE OF THE PARTIES AND THE INTEREST OF JUSTICE REQUIRE THAT THIS MATTER REMAIN IN THE DISTRICT OF COLUMBIA

Defendant argues that this case should be transferred to either the District of Maryland or to the District of Kansas. Plaintiff submits that the considerations of 28 U.S.C. Section 1404 (a) mandate that this matter remain in the District of Columbia.

28 U.S.C. Section 1404 (a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant correctly notes that a district court may transfer a case under 1404 (a) under three conditions: (1) there is another judicial district in which the action may have been brought; (2) the convenience of the parties and witnesses would be better served in the alternative district; and (3) transfer is in the interest of justice. Claasen v. Brown, 1996 WL 79490 (D.D.C. 2/16/96). However, only one of these conditions is satisfied in this case. This case could have been brought in Maryland where Plaintiff resides in accordance with 28 U.S.C. Section 1402 (b). The convenience of the parties and witnesses would be best served in the District of Columbia. Even though Plaintiff resides in Maryland, his Silver Spring residence is more convenient to D.C. than the district courts of Maryland. As noted in the preceding argument, the tortuous conduct complained of in this case occurred in the District of Columbia. As noted on the attached FTCA Standard Form 95, Plaintiff's listed witnesses are Judge Royce C. Lamberth, AUSA Patricia Stewart and courtroom clerk Monte Keller. All of them either reside or work in the District of Columbia. Additionally, as noted above, Plaintiff contends that the acts and omissions of the U.S. Marshal Office in the United States District Court for the District of Columbia on December 12, 2002 constituted the tortuous conduct in this case. Obviously, discovery in this case would focus on the personnel of that office on that date, policies and practices of that office and their communications and policies with the Bureau of Prisons regarding prisoner release.

Plaintiff contends that these witnesses are central to the issues in this case. Plaintiff expects that Judge Lamberth, his staff or AUSA Patricia Steward conducted some sort of investigation of this matter upon learning that the court order was not followed. Plaintiff submits that discovery on these issues with these witnesses would reveal where and when the tortious, wrongful act, error or omission occurred. Clearly, it would be more convenient and in the interests of justice to have this matter remain in the United States District Court for the District of Columbia.

Defendant focuses their dismissal and now their transfer arguments on the fact that the complaint alleges that Plaintiff was incarcerated in Kansas, the failure to release occurred in Kansas and the only federal official named was a BOP employee in Kansas. The allegation in the complaint against the BOP employee is only a portion of Plaintiff's claims. As noted above, the evidence in the record to date reveals that the convenience of the parties and witnesses and the interests of justice mandates that this matter remain in the District of Columbia. Therefore, Defendant's 1404 (a) motion must be denied.

WHEREFORE, for the foregoing reasons, and any reasons adduced at any hearing on this matter, Plaintiff respectfully requests that Defendant's Motion To Dismiss be denied or alternatively, that Plaintiff be permitted discovery on the issues raised herein.

Respectfully submitted,

_____
David M. Nester, #421894
717 D Street, N.W., #310
Washington, D.C. 20004
(202) 783-4474
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN LAMONT SHEPPARD   )
   )
      Plaintiff,   )
   )
      v.   ) Civil Action No. 06-0855
   )      (RBW)
   )
UNITED STATES OF AMERICA,   )
   )
      Defendant.   )

NOTICE REGARDING FILING OF SEALED MATERIALS

COMES NOW Plaintiff, Kevin Lamont Sheppard, by and through undersigned counsel, and submits this Notice that sealed attachments were filed in paper and CD-ROM format with this Court. These documents are not available for public viewing due to the privacy information contained therein.

Respectfully submitted,

_____
David M. Nester, #421894
717 D Street, N.W., Suite 310
Washington, D.C. 20004
(202) 783-4474
Counsel for Plaintiff

24