UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEVIN LAMONT SHEPPARD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-855 (RBW) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Kevin Sheppard ("the plaintiff"), a resident of Maryland and a former inmate of the United States Penitentiary in Leavenworth, Kansas ("Leavenworth"), brings this action against the United States of America ("the defendant") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2000). Complaint ("Compl.") ¶¶ 2, 5, 11. The plaintiff alleges that employees of the Bureau of Prisons ("BOP"), acting within the scope of their employment, negligently detained him in Leavenworth for approximately ten months after his release was ordered by another member of this Court. Id. ¶¶ 9-14. The plaintiff also alleges that employees of the United States Marshals Service ("USMS"), acting within the scope of their employment, "failed to take the necessary steps to transmit or transfer the order to the necessary parties to ensure [the] [p]laintiff's timely release." Id. ¶ 10. Currently before the Court is the defendant's motion to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) or, in the alternative, to transfer this case to an appropriate venue pursuant to 28 U.S.C. §§ 1404(a) and

1406(a) (2000) ("Def.'s Mot.").[1]  For the reasons set forth below, the Court dismisses the plaintiff's claim against the USMS for failure to state a claim upon which relief may be granted and transfers this action to the United States District Court for the District of Maryland.

## I. Factual Background

The plaintiff alleges the following facts in support of his complaint.  On August 12, 1996, Judge Royce Lamberth of the United States District Court for the District of Columbia sentenced the plaintiff to a term of 121 months incarceration in federal prison.  Compl. ¶ 7.  On December 6, 2002, after the plaintiff had served over five years of this ten-year sentence, the United States Attorney for the District of Columbia filed an unopposed motion to reduce the plaintiff's sentence pursuant to Federal Rule of Criminal Procedure 35(b).  Id. ¶ 8.  Judge Lamberth granted this motion on December 12, 2002, issuing a Judgment and Commitment Order wherein the plaintiff's sentence was reduced to time served and he was placed on supervised release for a term of five years.  Id. ¶ 9; see also Def.'s Mot., Exhibit ("Ex.") 1 (December 12, 2002 Judgment In a Criminal Case) ("Order") at 1-3.  The plaintiff contends that a copy of this Order was taken by Judge Lamberth's courtroom clerk to the Office of the United States Marshal in the United States District Court for the District of Columbia on that same day, but that the USMS did not enter the Order into its computer log—thus allowing it to be processed and transmitted to the BOP and, specifically, to the Leavenworth detention facility, where the plaintiff was incarcerated—until December 20, 2002, eight days later.  Compl. ¶ 10; Pl.'s Opp. at 20-21.

---

[1] The following papers have been submitted in connection with this motion:  (1) Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."); (2) Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp."); and (3) Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply").

On the morning of December 15, 2002, an automated "Program Review Report" concerning the plaintiff was generated by a BOP computer at Leavenworth.[2] Pl.'s Opp. at 5, 21 (stating that "the report was generated from an institutional computer on 12/15/2002 at 8:55:07"); see Pl.'s Opp., Ex. 12 (December 15, 2002 Program Review Report). This report listed the plaintiff's projected release date as November 19, 2004. Id. The plaintiff was also interviewed by his case manager at the Leavenworth facility on December 15, 2002. Compl. ¶ 11. The plaintiff alleges that the case manager "did not review or verify his release date" at that time, nor did he "take [any] other steps to ensure that [the] [p]laintiff was released in accordance with Judge Lamberth's order."[3] Id. The plaintiff was not released from custody until October 7, 2003. Id. ¶ 12. He commenced the present action two and a half years later, on May 6, 2006. Id. at 1.

On July 31, 2006, the defendant moved to dismiss this case, arguing, inter alia, that the District of Columbia is an improper venue for the litigation of this action, because (1) the plaintiff resides in Maryland and (2) both "the alleged failure to release [the] [p]laintiff" and "the alleged negligent acts" complained of by the plaintiff occurred in Leavenworth, Kansas. Def.'s Mem. at 11-12. In the alternative, the defendant argues that even if the Court finds that venue in this District is proper, "considerations of convenience and justice weigh in favor of transferring this action" to the District of Maryland or the District of Kansas. Id. at 13. In response, the plaintiff asserts that venue is proper in this judicial district because "the eight day delay in the

---

[2] According to the plaintiff, such reports are generated in connection with program reviews which are to be "conduct[ed] . . . for each inmate at least once every 180 days." Pl.'s Opp. at 13 (quoting 28 C.F.R. § 524.12(b) (2006)) (internal quotation marks omitted).

[3] The plaintiff states that he "did not become aware of the entry of Judge Lamberth's order until October of 2003[,] when he sought a furlough from his incarceration." Pl.'s Opp. at 19.

processing of Judge Lamberth's order" by USMS employees occurred in the District of Columbia.  Id. at 21.

## II. Standards of Review

*A. Dismissal for Failure to State a Claim*

The Court, acting sua sponte, may dismiss all or part of a plaintiff's complaint "for failure to state a claim if it appears beyond a doubt that the plaintiff[] can prove no set of facts that would entitle [him] to relief."  Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1031-32 (D.C. Cir. 2004) (citation omitted).  In so doing, the Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged."  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted).  However, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s]."  Id. (internal quotation marks and citations omitted); see also M.K. v. Tenet, 99 F. Supp. 2d 12, 17 (D.D.C. 2000) (stating that "[b]are conclusions of law and sweeping and unwarranted averments of fact will not be deemed admitted" for the purposes of a Rule 12(b)(6) motion) (citing Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987)).  The Court may only consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice in making a determination pursuant to Rule 12(b)(6).  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997).  A complaint may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002).

*B. Dismissal or Transfer for Improper Venue*

In considering a motion to dismiss for lack of proper venue under Rule 12(b)(3), "the Court accepts the plaintiff['s] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff['s] favor, and resolves any factual conflicts in the plaintiff['s] favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003) (internal quotation marks and citation omitted); see also 2215 Fifth St. Assocs. v. U-Haul Intern., Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001) (stating that courts will grant a 12(b)(3) motion if "facts [are] presented that . . . defeat [the] plaintiff's assertion of venue") (citation omitted). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) (citations omitted). If the Court concludes that venue is improper, it must either dismiss the action or, "if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2000). The decision whether to dismiss or transfer is committed to the "sound discretion" of the Court. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) (citations omitted).

### III. Analysis

*A. The Plaintiff's Claim Against the USMS*

The gravamen of the plaintiff's complaint can be easily parsed into two distinct claims: First, that the USMS employees in Washington, D.C., negligently failed to transmit the December 12, 2002 Order to BOP employees in Kansas until December 20, 2002, Compl. ¶¶ 18-22, and second, that BOP employees in Kansas negligently failed to release the plaintiff in accordance with the reduced sentence mandated by the December 12, 2002 Order until October

7, 2003, id. ¶¶ 13-18.  For the following reasons, the Court will sua sponte dismiss the plaintiff's claim against the USMS for failure to state a claim upon which relief can be granted.

The plaintiff claims that unidentified employees of the USMS, acting in the scope of their employment, acted negligently when they failed to process the December 12, 2002 Order until December 20, 2002, eight days after it was issued, thereby not informing BOP authorities of the plaintiff's reduction in sentence until that date.  Compl. ¶¶ 10, 20; Pl.'s Opp. at 20-21.  According to the plaintiff, "[t]he acts and omissions of [the USMS]" which caused this eight-day delay "were willful, reckless, wanton, in violation of the national standards of care and in conscious disregard for the [plaintiff's] rights."  Compl. ¶ 21.  Moreover, as a "direct and proximate result" of this alleged willful and wanton recklessness, the plaintiff contends that he "was illegally detained for a period in excess of nine months," during which time "he sustained severe suffering and mental anguish and a substantial loss of income."  Id. ¶ 22.  The Court finds that the plaintiff's claim against the USMS clearly fails as a matter of law.

The FTCA provides that federal district courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added).  Notwithstanding the defendant's claims to the contrary, Def.'s Mem. at 12, the alleged negligence of the USMS employees in the Office of the United States Marshal in the United States District Court for the District of Columbia in failing to promptly log the December 12, 2002 Order clearly occurred within the District of Columbia.

"[T]o establish negligence [in the District of Columbia,] a plaintiff must prove a duty of care owed to the defendant by the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." Novak v. Capital Mgmt. and Dev. Corp., 452 F.3d 902, 907 (D.C. Cir. 2006) (internal quotation marks and citation omitted).  Here, even assuming arguendo that the USMS possessed a duty to properly and promptly transmit to the BOP the December 12, 2002 Order reducing the plaintiff's sentence to time served, see Def.'s Mem. at 7-8 (arguing that no such duty exists); Pl.'s Opp. at 13-15 (arguing for the existence of such a duty), "it appears beyond a doubt that the plaintiff[] can prove no set of facts" demonstrating that the USMS, through its employees, breached such a duty by the actions alleged in this case, Cicippio-Puleo, 353 F.3d at 1032 (citation omitted).

     First, the plaintiff does not delineate, nor can the Court conceive, how an eight-day delay in processing the December 12, 2002 Order could have materially contributed to the plaintiff being "illegally detained for a period in excess of nine months." Id.  The plaintiff implicitly argues that had the Order been processed immediately, the Program Review Report generated by the BOP computer at Leavenworth would have reflected an earlier projected release date, which presumably might have caused the plaintiff's Leavenworth case manager to effectuate an earlier release.  See Pl.'s Opp. at 21 (stating that "[a] review of the chronology of events in this case seem to suggest that the eight day delay in the processing of the order in the District of Columbia may have led to the incorrect release date on the 12/15/02 Program Review [R]eport").  Not only is this argument untenably tenuous and speculative, but it is also predicated on the notion that the Order, which was issued on Thursday, December 12, 2002, should reasonably have been processed and transmitted to Leavenworth by Sunday, December 15, 2002, a space, depending on

what time the Order was issued on December 12, 2002, of approximately one business day. This proposition the Court emphatically rejects. Furthermore, despite the plaintiff's contention that the December 12, 2002 Order mandated his "immediate release," Compl. ¶ 9, the text of the Order states only that the plaintiff's sentence was to be reduced to time served and that the plaintiff was then to be placed on supervised release for a period of five years, Order at 2-3. There was no sense of dire urgency or expeditiousness expressed in the Order, nor should there have been, that would lead the Court to believe that an eight-day delay in its transmittal could remotely be plausibly attributed to "willful, reckless, [and] wanton [behavior], in violation of the national standards of care and in conscious disregard for the [plaintiff's] rights." Compl. ¶ 21; see generally Order. To the contrary, a period of eight days between issuance and transmittal of a Judgment and Commitment Order seems to this Court to be well within the normal lag time that can reasonably be expected, given the demands imposed on the USMS in this judicial district, or any judicial district with a similar number of district judges. Finally, while the plaintiff makes vague reference to USMS regulations which purport to require USMS employees "to ensure that prisoners are released in accordance with court orders . . . and [to] exchange information with other agencies regarding prisoner processing and release," Pl.'s Opp. at 13 (quoting Compl. ¶ 20) (internal quotation marks omitted), the actual regulation cited by the plaintiff merely provides a boilerplate list of the general functions of United States marshals, including the "receipt, processing and transportation of prisoners held in the custody of a marshal or transported by the [USMS] under cooperative or intergovernmental agreements" and the "[c]oordination and direction of the relationship of the offices of the [USMS] with the other organizational units of the Department of Justice," Pl.'s Opp. at 14-15 (quoting 28 C.F.R. § 0.111 (2006)) (internal

quotation marks omitted).  Even assuming, again, that these functions amounted in some fashion to cognizable legal duties, the plaintiff cites nothing to indicate that the seemingly routine administrative delay in processing the December 12, 2002 Order would, or could possibly, constitute a breach of those duties.  See Novak, 452 F.3d at 907.  In short, the Court cannot envision any evidence that the plaintiff might produce to demonstrate that the USMS acted negligently, or otherwise in a manner that should subject it to tort liability, in processing the December 12, 2002 Order on December 20, 2002.  Accordingly, "it appears beyond a doubt that the plaintiff[] can prove no set of facts that would entitle [him] to relief" on his claim against the USMS, Cicippio-Puleo, 353 F.3d at 1032 (citation omitted), and the Court will therefore dismiss the claim sua sponte for failure to state a claim upon which relief can be granted.

*B. The Defendant's Motion to Dismiss or Transfer for Improper Venue*

Having concluded that the plaintiff's claim against the USMS must be dismissed, the Court turns to the defendant's contention that the District of Columbia is not the proper venue for the litigation of this action.  Def.'s Mem. at 11-14.  Under the relevant provision of the FTCA, venue is proper "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b).  It is undisputed that the plaintiff is now a resident of Maryland.  Compl. ¶ 5; Def.'s Mem. at 11.  It is also clear that the plaintiff's remaining claim—that employees of the BOP failed to "ensure that [he] was not detained after his release was ordered by the United States District Court for the District of Columbia," Compl. ¶ 14—occurred in Leavenworth, Kansas.  Other than the eight-day delay in processing the December 12, 2002 Order, which this Court has concluded is not a basis for a finding of liability, the plaintiff does not contend that any action or omission occurring in the District of Columbia

led to the BOP's failure to afford him a timely release.  <u>See</u> generally Compl.; <u>see</u> also Pl.'s Opp. at 20-21.  The Court therefore concludes that venue over the plaintiff's claim against the BOP for its allegedly negligent failure to ensure his timely release from his detention in Leavenworth is improper in the District of Columbia.

The Court must now exercise its discretion in determining "whether a transfer or a dismissal [of this action] is in the interest of justice."  <u>Naartex</u>, 722 F.2d at 789 (citations omitted); <u>see</u> 28 U.S.C. § 1406(a) (stating that if a district court concludes that venue is improper, it must "dismiss, or if it [is] in the interest of justice, transfer [the] case to any district or division in which it could have been brought").  The parties agree that this action could have been brought in the District of Maryland.  Def.'s Mem. at 11; Pl.'s Opp. at 22.  It is also clear that this action could have been brought in the District of Kansas, where the alleged negligence by the BOP in failing to timely release the plaintiff occurred.  <u>See</u> 28 U.S.C. § 1402(b). Furthermore, the interest of justice generally favors transfer over dismissal.  <u>See</u> <u>Davis v. Am. Soc'y of Civil Eng'rs</u>, 290 F. Supp. 2d 116, 120 (D.D.C. 2003).  In this case, to dismiss the action and direct the plaintiff to refile his complaint in another judicial district would be needlessly duplicative and costly.  Moreover, to transfer this action to the District of Kansas would place an undue burden on the plaintiff, who resides in Maryland, and his attorney, who practices in the District of Columbia.  Compl. ¶ 5; Pl.'s Opp. at 23.  The Court thus finds that it is in the interest of justice to transfer this matter to the District of Maryland.

## IV. Conclusion

For the reasons stated above, the Court concludes that "it appears beyond a doubt that the plaintiff[] can prove no set of facts that would entitle [him] to relief" on his claim against the

USMS.  <u>Cicippio-Puleo</u>, 353 F.3d at 1032 (citation omitted).  That claim is therefore dismissed.  In addition, the Court concludes that the District of Columbia is the improper venue to adjudicate the plaintiff's remaining claim against the BOP.  It therefore transfers this action to the District of Maryland, where it could have been brought originally.

    **SO ORDERED** this 12th day of April, 2007.[4]

REGGIE B. WALTON<br>United States District Judge

---

[4] An Order consistent with the Court's ruling was issued on March 30, 2007.